```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

LINDA VICE,

                Plaintiff,

vs.                                    Case No. 13-1281-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On November 2, 2011, administrative law judge (ALJ) John B. Langland issued his decision (R. at 12-23). Plaintiff alleges that she had been disabled since February 5, 2009 (R. at 12). Plaintiff meets the insured status requirements for disability insurance benefits through December 31, 2014 (R. at 14). At

step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 14). At step two, the ALJ found that plaintiff had the following severe impairments: connective tissue disorder/fibromyalgia, Wagner's disease; degenerative joint disease of the knees and hands; anxiety disorder and depressive disorder (R. at 14). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15). After determining plaintiff's RFC (R. at 16-17), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 21). At step five, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy (R. at 22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in his evaluation of the medical opinion evidence?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who

has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given

controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

The record contains a physical RFC assessment, dated May 12, 2010 (R. at 344-351); those findings were affirmed by Dr. Siemsen, a non-examining physician on November 16, 2010 (R. at 388). The ALJ stated that this assessment was consistent with

the medical evidence, and gave "substantial" weight to this opinion (R. at 20).

The record also contains two medical source statements-physical from a treating physician, Dr. Alexander. The first one is dated June 9, 2010 (R. at 375-376), and the second one is dated April 11, 2011 (R. at 390-391). In the first one, Dr. Alexander opined that plaintiff could stand/walk for 3 hours in an 8 hour day, and sit for 4 hours in an 8 hour day. Plaintiff can never crouch or crawl, and needs to lie down hourly for 10-15 minutes due to pain (R. at 390-391). In the second one, Dr. Alexander opined that plaintiff could stand/walk for 3 hours in an 8 hour day, and sit for 3 hours in an 8 hour day. Plaintiff can never balance, stoop, or crawl and needs to lie down every hour for 15 minutes due to pain (R. at 390-391).

The ALJ acknowledged that such limitations would prevent even the performance of sedentary work (R. at 20). The ALJ then stated the following regarding the opinions of Dr. Alexander:

> The undersigned notes that Dr. Alexander failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact this limited. Indeed, the actual physical examination data is pretty much unremarkable all the way through the doctor's progress notes (exhibits 4F, 14F, and 18F). Further, the undersigned notes that while Dr. Alexander does have a treating relationship with the claimant, the treatment history reveals a nurse or medical assistant primarily saw the claimant when she was

8

> treated at his office (Exhibits 4F, 14F, and 18F).  For these reasons, the undersigned is able to accord Dr. Alexander's opinion but little weight.

(R. at 20).

The ALJ discounted the opinions of Dr. Alexander because he failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the plaintiff were in fact this limited.  However, the ALJ failed to indicate the evidentiary or factual basis for this finding.  The ALJ did not cite to any evidence or medical opinion that Dr. Alexander's opinion is suspect because he failed to reveal the type of significant clinical or laboratory abnormalities "one would expect" if the plaintiff were in fact as limited as Dr. Alexander indicated.

The adjudicator is not free to substitute his own medical opinion for that of a medical source.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical opinion or other evidence indicating that Dr. Alexander's opinion failed to reveal the type of significant

9

clinical and laboratory abnormalities "one would expect" if plaintiff were as limited as Dr. Alexander indicated, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).[1]

The ALJ also stated that the actual physical examination data (exhibits 4F, 14F and 18F) is "pretty much unremarkable all the way through the doctor's progress notes" (R. at 20). However, the medical records cited to by the ALJ include objective findings from Dr. Bender, a chiropractor. On April 8, 2009, Dr. Bender found apparent malalignment with spastic and tender deep paraspinal musculatures of the left upper cervical range. He found evidence of muscular spasm and pain to palpation in the right upper cervical range. Misalignment plus spastic and tender musculatures were found in the left middle cervical region. Spasm and tenderness was found in the right middle cervical region. Spasm and pain to palpation were apparent to the entire lower cervical spine. Sublaxation with accompanying spasm and tenderness were found at the right upper thoracic range. Spastic and tender musculatures are apparent specific to the middle lumbar spine bilaterally. Malalignment

---

[1] Defendant's brief indicated that the ALJ stated that the opinion failed to reveal the physical abnormalities that supported the opinion; in other words, the form itself did not explain the basis for the findings and lacked any narrative explanation for the restrictions provided (Doc. 18 at 6). However, that it not an accurate representation of the ALJ's explanation for giving little weight to the opinions of Dr. Alexander. As noted above, the ALJ stated that Dr. Alexander failed to reveal the type of significant clinical and laboratory abnormalities "one would expect" if the claimant were in fact this limited. Immediately afterwards, the ALJ referenced the medical records (exhibits 4F, 14F, 18F), stating that the physical examination data were pretty much unremarkable all the way through the progress notes (R. at 20).

10

was noted coupled with muscular spasm and tenderness in the left lower lumbar region.  Spasm and tenderness were also evidence at the right lower lumbar area (R. at 320).  Similar objective findings were also noted on April 9, April 11 and April 14, 2009 (R. at 321-324).

Dr. Bender concluded in his April 8, 2009 objective findings by stating that:

> Corresponding with clinical presentation, ranges-of-motion in the cervical region are decreased with severe pain and in the dorsolumbar region restricted with moderate pain.

(R. at 320).  On April 9, 2009, Dr. Bender concluded as follows:

> The ranges-of-motion, corresponding with clinical evaluation, are restricted with severe pain in the cervical area and diminished with moderate pain in the dorsolumbar area.

(R. at 321).  On April 11 and 14, 2009, Dr. Bender concluded by stating that ranges-of-motion are reduced with moderate pain in the cervical and dorsolumbar area (R. at 322, 324).

Furthermore, the treatment notes of February 2, 2011, January 8, 2010, July 29, 2010 and October 12, 2010 indicate an assessment of "chronic pain management" (R. at  382, 397, 398, 401).  Chronic neck and lower back pain was assessed on March 15, 2010, April 12, 2010, July 1, 2010 and June 4, 2010 (R. at 383, 384, 385, 386).  The records noted a need for refill on plaintiff's chronic pain medications on July 2, 2009, February

11

16, 2010 and September 21, 2010 (R. at 312, 380, 387).  Chronic pain management was noted on November 23, 2009 (R. at 307).  Chronic lower back pain was noted on February 11, 2009, March 13, 2009, and April 10, 2009 (R. at 315-317).  Chronic lower back pain was assessed on December 18, 2008 (R. at 319).  Thus, the medical treatment notes cannot be described as unremarkable all the way through, given the repeated assessments of chronic pain, and the very specific objective findings of Dr. Bender of malalignment, spasms, and tenderness with decreased range-of-motion coupled with severe or moderate pain.

For the reasons set forth above, the court finds that substantial evidence does not support the rationales given for giving little weight to the opinions of Dr. Alexander.  This case shall therefore be remanded in order for the ALJ to reevaluate the opinions of Dr. Alexander and determine what weight should be accorded to his opinions in accordance with the case law set forth above.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff also argues that the ALJ erred in his credibility analysis.  The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand after the ALJ further considers the medical source opinion evidence and makes new RFC findings, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 26th day of August 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge